## ENFORCEMENT OF LIABILITY OF STOCKHOLDERS IN FOREIGN CORPORATION.

Circuit Court of Cuyahoga County.

W. H. ROHER ET AL v. THE PEOPLES SAVINGS BANK ET AL.

Decided, March 7, 1904.

*Stockholders' Liability—Jurisdiction—When Liability of Stockholders in Foreign Corporation May be Enforced—Court Will Not Determine Solvency of Non-Resident Stockholders—Creditors Bound by Terms of Certificate Taken in Settlement.*

1. Ohio courts have jurisdiction in an action brought against resident stockholders to enforce stockholders' statutory liability in a foreign corporation.

2. A court can not pass upon the solvency of stockholders who are not before it, and the amount stockholders in court will be required to pay will be based upon the assumption that all stockholders are solvent.

3. Creditors of an insolvent bank who, in order to allow it to resume business, agree to accept certificates of deposit calling for interest, but accept certificates which do not provide for interest, are bound by the terms of the certificates accepted.

*Brewer, Cook & McGowan* and *Bentley & Vickery,* for plaintiffs.

*Squire, Sanders & Dempsey* and *Henderson & Quail,* contra.

MARVIN, J.; WINCH, J., and HALE, J., concur.

The defendant, the Peoples Savings Bank, is an insolvent corporation, organized under the laws of the state of Colorado, and until its insolvency carried on a banking business in that state. The plaintiffs are creditors of said corporation and bring the suit in behalf of themselves and all other creditors of said corporation.

The capital stock of said corporation is $100,000, all of which was issued and paid for.

A large part of the stockholders of said corporation reside in the state of Colorado, some in other states, and the defendants, N. O. Stone, Frank S. Henry, F. A. Sterling, Joseph Pinkett

and Anthony W. Gibbons, as administrator of the estate of Joseph Gibbons, deceased, are stockholders in said corporation and reside in the state of Ohio. The defendant corporation has not entered an appearance here and is not under the jurisdiction of the court. The defendant stockholders hereinbefore named are all before the court.

Under the laws of the state of Colorado, stockholders in corporations are liable to the creditors of such corporations in an amount equal to 200% of the stock held by each.

On the 17th day of July, 1893, this corporation being in financial difficulties, made a general assignment for the benefit of its creditors.

Thereafter the stockholders made an agreement among themselves that they would pay into a common fund 100% of their holdings of stock, to be used in the payment of the corporation's debts, which should thereupon resume business, the balance of the indebtedness being provided for by certificates of deposit to be issued to the several creditors. To this the creditors consented, and $82,000 was paid in by the stockholders under this agreement. The assets were turned over by the assignee to the corporation, the money thus paid in was used toward the payment of the indebtedness, and the balance of the indebtedness was provided for by the issuing of the certificates of deposit hereinbefore mentioned, and the bank resumed the transaction of business on the 28th of May, 1894. Certificates of deposit were issued to the several creditors for the amount owing to each. These certificates were dated May 28, 1894, and each creditor received five of them, each being for one-fifth of the amount owing to the creditor to whom they were issued. These certificates were made payable at different dates. The two first falling due to each creditor were paid at maturity.

On the 29th day of June, 1895, the corporation, finding itself unable to carry on its business, again made a general assignment for the benefit of its creditors. At the time of this last assignment the indebtedness of the bank was $200,407.31 and was all represented by the remaining certificates of deposit, that is, three to each creditor. The first of the certificates so remaining unpaid was due July 1st, 1895; the second, January

1st, 1896, and the third, July 1st, 1896; an equal amount, $66,802.44, falling due at each of said dates. The several certificates were alike in form and each, except as to amount and name of the depositor, read:

"THE PEOPLES SAVINGS BANK,

"$10.84.                          DENVER, COLO., May 28, 1894.

"Frank H. Vogt has deposited in this Bank ten 84/100 dollars payable to the order of self, in current funds on return of this certificate properly endorsed.

"D. D. MUIR,<br>"V. P. & Cashier."

On the first one-third of these certificates was an endorsement reading:

"This certificate is hereby made payable July 1, 1895, with interest at the rate of 5% per annum until maturity or until called in prior thereto. No interest after maturity."

On the second one-third was the same endorsement except that the date of maturity was January 1, 1896; and on the remaining one-third was the same endorsement except that the maturity was fixed at July 1, 1896. Upon these certificates the assignee has made payments as follows: December 20, 1900, 40%; November 26, 1901, 10%; December 22, 1902, 8%; making in the aggregate a payment of 58% of the principal of the indebtedness. The assets of the corporation have been exhausted in making these payments, except that a suit is now pending in the Supreme Court of the United States on which something may be realized for this corporation. As to this suit it may be said that the creditors of the corporation are not required to wait until the determination of this suit before proceeding against the stockholders for their part.

The question of the jurisdiction of this court was raised by demurrer to the petition, and we held that we had jurisdiction over the defendants residing in Ohio. We adhere to our holding made on the demurrer without further discussion of the question.

From what has been said, it appears that if all the stockholders of the corporation are solvent there is a fund amounting to $118,000 available for the payment of the creditors, this being

made up of $18,000 not paid in under the agreement by which the bank was to resume business and $100,000 being the amount for which the stockholders would have been liable if the original $100,000 provided for in the agreement to resume had all been paid in. The indebtedness of the corporation is the balance due upon these certificates after deducting therefrom the 58% paid by the assignee, as hereinbefore set out.

Under the resumption agreement it was provided that the certificates of deposit to be issued to the creditors should draw interest at the rate of five per cent. per annum payable semi-annually from September 1, 1893, until paid. It will be noticed that the certificates issued did not conform to this agreement in that there is no provision for the semi-annual payment of interest, nor is interest to begin on the 1st of September, 1893, but at the date of the certificate as shown by the endorsement, and interest to cease at the maturity of the certificate, or at such earlier time as the certificate should be called in by the corporation. The creditors accepted the certificates as they were issued and to that extent waived the provisions made in the resumption agreement, so that whatever rights the creditors have is such as is shown by the certificates held by them.

· On the part of the plaintiffs it is urged that the provision endorsed on the several certificates in the words, "No interest after maturity," can not be held to deprive the holders of these certificates of interest after such maturity because of the fact that at the time when these several unpaid certificates matured the assets of the corporation were in the hands of an assignee for the benefit of creditors and the certificates could not then be paid. It is said that it is clear that the purpose of this endorsement was to induce the holders of the certificates to present them promptly for payment and that if when they had been presented for payment the corporation had failed to pay, that interest would be allowed to the certificate holder; that to now say that in order to entitle the holder of the certificate to draw interest, he should show that he did present a certificate at maturity and demand payment would be to require of him a vain thing since it is certain that a presentation and demand would have availed nothing, as the corporation had no assets in its

hands with which to pay. While this question of interest is not free from doubt, we hold that the creditors are bound by this endorsement, and are therefore entitled to be paid only the amount due upon their several certificates at maturity. .

It was sought on the hearing to show that a considerable number of stockholders residing outside of Ohio and who are not parties to this proceeding are insolvent. We *hold* that we are without jurisdiction to determine the solvency or insolvency of stockholders not before the court; but even if we have the jurisdiction, the evidence is not such as to establish such insolvency as to any of such stockholders.

If interest were allowed by us upon these certificates after maturity, even though all the stockholders are solvent, the result would be that the defendants who are before the court would each be required to pay 100% upon the stock held by him (each of such defendants having paid under the resumption agreement 100% of such stock), therefore if we were to hold all of the stockholders to be insolvent whose insolvency was sought to be shown in this proceeding, it is probable that each of the defendants now before the court would be required to pay 100% of the stock held by him and hence no further computation would be necessary, but holding as we do, that we must dispose of this case as though all of the stockholders were solvent, and that the indebtedness represented by these certificates draws no interest after the maturity of the several certificates, it follows that less than 100% will be required of these stockholders. A computation shows that the unpaid certificates with interest to maturity would be as follows:

The interest on those falling due on July 1, 1895, is $3,646.30; on those falling due on January 1, 1896, $5,316.36; and on those falling due July 1, 1896, $6,986.43, making the aggregate indebtedness upon these certificates, if nothing had been paid thereon, $216,356.41. The aggregate of payments made by the assignee is $116,236.23, leaving to be paid by the stockholders, $100,120.18. As already said, the amount available for this payment, treating all the stockholders as solvent, is $118,000, and would require from each about 84.8% of the amount of his stock.

The fact that some of the stockholders have already paid the amount of their liability and thereby reduced the actual indebtedness is not considered here because that would not affect the stockholders who have not paid. Upon the basis herein indicated, the defendants who are before the court are liable in this action, and judgment will be entered accordingly.